UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Citizens Financial Group, Inc., | : | |
| Plaintiff, | : | |
| vs. | : | C.A. NO. 05-057 S |
| Nationwide Appraisal and Title Company of Ohio, Inc. | : | |
| Defendant. | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PLAINTIFF'S COMPLAINT**

Plaintiff, Citizens Financial Group, Inc., hereby objects to, and opposes, Defendant's Motion to Dismiss or, In the Alternative Stay, Plaintiff's Complaint for Declaratory Judgment. For the reasons set forth in the Memorandum of Law in Support of Citizens Financial Group, Inc.'s Opposition to Defendant's Motion to Dismiss, or In the Alternative Stay, which will be submitted promptly after the Court's allowance of the Plaintiff's Motions to Exceed the Page Limits, Defendant's Motion should be denied.

Respectfully submitted,

CITIZENS FINANCIAL GROUP, INC.
By its Attorneys

John Daukas by [signature]

John B. Daukas, Esq. (#5437)
GOODWIN PROCTER LLP
53 Exchange Place
Boston, MA 02109
(617) 570-1000

(10)

Robert M. Duffy, Esq. (#4428)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701

April 15, 2005

**CERTIFICATE OF SERVICE**

TO:

Thomas W. Lyons, III, Esq.
Strauss, Factor, Laing & Lyons
22 Richmond Street, Suite 208
Providence, RI 02903

I hereby certify that on this 15 day of April 2005, I caused to be forwarded by First Class Mail a copy of the within *Objection* to the above-named counsel of record.

Theresa Benson

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CITIZENS FINANCIAL GROUP, INC., Plaintiff, v. NATIONWIDE APPRAISAL AND TITLE COMPANY Defendant. | Civil Action No. 05-057S |

**MEMORANDUM OF LAW IN SUPPORT OF CITIZENS FINANCIAL GROUP, INC.'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY**

## PRELIMINARY STATEMENT

This action is the first of two lawsuits between the same principal parties and based upon the same core operative facts. Both lawsuits are contract disputes, arising from the purchase by Nationwide Appraisal and Title Company ("Nationwide") of the business of Real Estate Appraisal Services, Inc. ("REAS") from Citizens Financial Group, Inc. ("CFG"). Confronted with Nationwide's continuing threats of legal action and increasing uncertainty regarding the parties' continuing obligations, CFG filed this suit on February 11, 2005, seeking a binding declaration that it had not breached the parties' agreement. *Two weeks later*, Nationwide filed an action in Ohio state court against CFG and REAS. In its Motion to Dismiss, or in the Alternative, to Stay, Nationwide asks the Court to dismiss or stay this action. Pursuant to the well-established first-to-file doctrine, this Court should deny Nationwide's motion and permit this action to proceed.

Nationwide's motion ignores the "first-to-file" doctrine and labors to malign CFG's motives and manufacture some meaningful distinction between this action and its Ohio lawsuit. Nationwide's arguments fail for several reasons.

*First*, there are no significant differences between the two actions because both disputes arise from the contracts governing CFG's sale of REAS's business to Nationwide. The contract claims in both actions concern primarily Nationwide's assertion that CFG promised Nationwide nearly $20 million worth of business over the course of 12 months following the transaction.[1]

*Second*, Nationwide's allegations regarding CFG's motives are false and beside the point. Nationwide repeatedly tried to bully CFG into rewriting the bargain the parties struck; it threatened litigation and claimed that CFG owed it in excess of $2 million, which mysteriously increased to $4.3 million three weeks later. CFG properly filed this action to determine the parties' legal rights and their on-going obligations to each other.

*Third*, the gravamen of Nationwide's motion—that this action must be dismissed as a matter of discretion because it is merely a declaratory judgment action—is contrary to established law. *See Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 397-98 (D. Mass. 1996) (general rule favors the forum of the first-filed action, whether or not it is an action for declaratory judgment); *SW Indus., Inc. v. Aetna Cas. & Sur. Co.,* 653 F. Supp. 631, 635-36 (same).

In sum, Nationwide has furnished no compelling reason for this Court to depart from the well-established first-to-file doctrine. Nationwide cannot threaten to file suit—apparently surmising that its threats might coerce a quick settlement—and then claim surprise that CFG

[1] That contention is contrary to the express terms of the parties' agreement, which does not impose any obligation on CFG to guarantee Nationwide a certain volume of monthly business. In fact, it expressly provides that it shall be in CFG's "sole discretion" whether to refer to Nationwide any business. Nationwide's "oral contract" and fraud claims are unvarnished attempts to rewrite the unequivocal terms of the negotiated contract.

elected to seek a judicial determination of the parties' on-going rights and obligations.

## BACKGROUND

Both this action and Nationwide's later-filed action arise from Nationwide's purchase of the assets and business of REAS from CFG pursuant to an Acquisition Agreement between CFG and Nationwide, dated October 15, 2004 ("Acquisition Agreement"). *See* Exhibits to Memorandum of Law in Support of Defendant's Objection to Plaintiff's Motion to Dismiss ("Ex."), submitted herewith, A. The parties executed ancillary agreements as well, including a Fee and Volume Agreement ("Agreement") executed on the closing on November 5, 2004. *See* Ex. B.

Nationwide's Ohio lawsuit is merely the latest iteration of Nationwide's efforts to rewrite the express terms of the bargain it struck with CFG. The gist of Nationwide's complaint is that CFG guaranteed Nationwide nearly $20 million worth of business following the acquisition. The Agreement provides no such thing, and in fact states that it is in CFG's *"sole discretion"* whether to direct business to Nationwide. *See id.*, § 1.[2]

Before this action was filed, Nationwide made a series of threats and allegations intended to progressively ratchet up the pressure against CFG, in the hope that CFG would find it easier to acquiesce to its demands than to seek a legal determination of the parties' rights and obligations. For example,

> (1) On January 27, 2005, counsel for Nationwide sent CFG a letter alleging that CFG breached the Agreement and demanding immediate payment of more than $2 million. *See* Ex. C (Letter, dated January 27, 2005, from Steven G. Fishbach, Esq. to Steve Adamo, *et al.*);

---

[2] Section 1 of the Agreement states: "From and after the date of this Agreement, CFG shall, in its sole discretion, engage Nationwide to provide appraisal, title, closing and flood services for CFG and its subsidiaries." *See* Ex. B.

(2) A few days later, on February 1, 2005, Nationwide contacted CFG and threatened "legal intervention" if CFG refused to acquiesce to its demands and stated that "this is headed in the wrong direction." *See* Ex. D (E-mail, dated February 1, 2005, from Richard Alexander to Jason Jolin);

(3) The following day, February 2, 2005, counsel for Nationwide sent CFG a second letter supplementing the January 27 letter and reiterating its position; and

(4) Thereafter, Nationwide again threatened to file suit.

CFG responded to Nationwide on February 10, 2005, denying that it breached any of its contractual obligations, and making clear that Nationwide's principal claim was devoid of merit because no provision in the Agreement guaranteed any amount of purchased services from Nationwide. *See* Ex. E (Letter, dated February 10, 2005, from Kathryn I. Murtagh, Esq. to Steven G. Fishbach, Esq.). On February 11, 2005, CFG filed this action ("Rhode Island Action"), seeking declaratory relief that CFG did not owe Nationwide any obligation to provide a minimum volume of business.

Nationwide's counsel did not respond to CFG's letter of February 10. Instead, on February 22, 2005, one of Nationwide's business people sent a letter to CFG, stating its intention to "terminate all of the former REAS employees and close down the former REAS offices effective March 15, 2005," and demanding payment of $4.3 million, nearly twice what it had demanded three weeks earlier. *See* Ex. F (Letter, dated February 22, 2005, from Richard Alexander to Steve Adamo).

The next day, February 23, 2005, Nationwide filed, but did not serve, its suit in Ohio state court, naming CFG and REAS as defendants. *See* Ex. G. The Ohio state action has since been removed, and is now pending in the United States District Court for the Northern District of Ohio, *Nationwide Appraisal and Title Co. v. Citizens Financial Group, Inc. and CFG Appraisal, Inc., f/k/a/ Real Estate Appraisal Services, Inc.*, C.A. No. 1:05-CV-0827 ("Ohio Action"). *See*

Ex. H (Docket report of Ohio Action). On March 9, 2005, CFG served Nationwide with CFG's complaint in the Rhode Island Action. Eight days later, on March 17, 2005, Nationwide served CFG in the Ohio Action. Indisputably, CFG was the first to file and first to serve.

## ARGUMENT

### I. PURSUANT TO THE WELL-SETTLED "FIRST-TO-FILE" RULE, CFG'S FIRST-FILED ACTION SHOULD PROCEED IN THIS COURT.

The first-filed doctrine is "followed universally" and "'where identical actions are proceeding concurrently in two federal courts . . . the first filed action is generally preferred in a choice-of-venue decision.'" *Feinstein v. Brown*, 304 F. Supp. 2d 279, 280-81 (D.R.I. 2004) (*quoting Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)) (alterations in original). The rule is intended to avoid "duplicative litigation and a waste of judicial resources," *see Cianbro*, 814 F.2d at 11, and it establishes a strong presumption in favor of allowing the controversy to be adjudicated in the forum in which it was first filed. *See id.*

The exercise of the first-to-file doctrine turns on three factors: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake. *See, e.g. SW Indus.* 653 F. Supp. at 634-36. Each factor compels the application of the rule here.

#### A. The Rhode Island Action Was Filed First.

The relevant chronology is, of course, determined by when the parties filed their original complaints. *See Feinstein*, 304 F. Supp. 2d at 281-83. CFG filed the Rhode Island Action on February 11, 2005, and Nationwide filed the Ohio Action on February 23, 2005. Thus, CFG plainly satisfies the first element of the first-to-file rule.

#### B. The Principal Parties Are Identical.

The principal parties to this action and the Ohio Action—CFG and Nationwide—are

identical. The only difference is that Nationwide joined REAS in the Ohio action. Nationwide contends that this compels the dismissal of this action, arguing that "REAS is a necessary party because Nationwide may be subject to inconsistent obligations should issues in the less-inclusive Federal Action be resolved differently than in the encompassing State Action." *See* Def.'s Mem. at 5. Tellingly, Nationwide does not identify what "inconsistent obligations" Nationwide might be subject to if REAS is not a party to this action, because there are none.

Nationwide's effort to characterize REAS as a necessary party is a transparent fabrication. REAS is not even a party to the Acquisition Agreement or the ancillary agreements. Nationwide's sole claim against REAS is for its alleged breach of a provision of the Acquisition Agreement that required REAS to provide certain notices to Nationwide *prior to* the closing of the acquisition. Quite simply, there are no on-going rights or obligations between REAS and Nationwide, and therefore Nationwide can have no obligations to CFG that are "inconsistent" with obligations to REAS.[3]

The parties need not be identical to apply the first-to-file rule, and Nationwide's transparently inappropriate joinder of REAS should not dissuade this Court from applying the first-to-file rule. *See Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999) (finding sufficient similarity between the parties to apply the first to file rule even though plaintiff in the second filed action amended complaint to add a second defendant not a party to the first action).

[3] In any event, Nationwide admits in its Ohio Complaint that it knew of the very information it contains was withheld. *See* Ex. G, ¶ 24. Thus, Nationwide fraudulently joined REAS in the Ohio Action for the sole purpose of destroying diversity. On March 29, 2005, CFG removed the Ohio Action to the Northern District of Ohio. *See*, Ex. H. On April 12, 2005, CFG moved to remand the Ohio Action to Ohio state court. *See id.* CFG will oppose that motion in due course, setting forth all of the reasons why REAS was fraudulently joined in the Ohio Action and should be dismissed.

### C. The Rhode Island And Ohio Actions Are Based Upon The Same Core Facts And Legal Issues.

The third element courts consider in applying the first-to-file doctrine—the similarity of the issues presented in the two actions—also supports its application here. Nationwide misleadingly contends that this action "represents a sliver of the parties' dispute." *See* Def.'s Mem., at 4. To the contrary, this action concerns the principal dispute between the parties, *i.e.*, whether CFG agreed to purchase from Nationwide a minimum of $1.6 million of services per month for a period of twelve months. *See* Def.'s Mem., at 4; Exs. C-G.[4] The post-Closing disputes asserted by Nationwide in the Ohio Action support rather than bar application of the first-to-file rule because they arise from the same agreements. *See* Exs. A-B; Ohio Compl., ¶¶ 38-64.

In any event, precise identity of claims is not a prerequisite to the application of the first-to-file rule. Where claims arise out of the same facts and present similar legal issues, the first-to-file rule must be applied. *See Plating Resources*, 47 F. Supp. 2d at 903; *see* also *SW Indus.*, 653 F. Supp. at 635-37 (applying first-to-file rule and finding sufficient identity between first-filed declaratory judgment action and later-filed damages action including additional claims).[5]

## II. NATIONWIDE HAS NOT MET ITS HEAVY BURDEN OF SHOWING THAT DISMISSAL OR STAY IS WARRANTED.

A party seeking to dismiss a first-filed action bears the burden "to establish sufficient reason for dismissing it." *Comtec Info. Sys., Inc. v. Monarch Marking Sys., Inc.*, 962 F. Supp.

---

[4] The similarity of the claims in the two actions is amply demonstrated by Nationwide's summary of its claims in the Ohio action, where it states that its first, second, and fourth claims all stem directly from its contention that CFG was a guarantor of a monthly volume of business. *See* Def.'s Mem., at 3. Nationwide's other two claims in the Ohio Action arise from the Agreement as well, which provides that CFG will defray a portion of Nationwide's severance expenses in the event that it did not provide a certain amount of monthly business (Nationwide's third claim), and that CFG could, in its discretion, use Nationwide to provide certain services (Nationwide's fifth claim). *Id.*

[5] In any event, Nationwide is free to assert its claims as counterclaims to this action.

15, 18 (D.R.I. 1997). None of the reasons advanced by Nationwide satisfy its burden.

### A. Nationwide Has Not Shown That The Ohio Action Should Be Preferred Over CFG's Declaratory Judgment Action.

Nationwide's contention that this court should dismiss this action because it is merely a declaratory judgment action is contrary to law. *See* Def.'s Mem., at 4, 7. "[T]hat declaratory judgments should be stayed in favor of damages actions, is a doctrine that no longer commands support in the federal courts." *SW Indus.*, 653 F. Supp. at 636. The propriety of the declaratory judgment remedy here could not be more obvious. "The declaratory judgment action is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted" and "allows the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). This is a textbook case for a declaratory judgment action.

### B. Nationwide Has Not Shown That CFG's Declaratory Judgment Action Is Improperly Anticipatory.

Nationwide has not demonstrated that CFG's declaratory judgment action was improperly anticipatory or a mere race to the courthouse. Declaratory judgment actions are not improperly anticipatory where an ongoing dispute exists and a party desires to protect itself and clarify its ongoing obligations. *See Biogen*, 954 F. Supp. at 397-99 (declaratory judgment not improper forum shopping where plaintiff had a reasonable apprehension that it would be sued, and plaintiff did not lull defendant into delaying filing suit); *Holmes Group., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16-17 (D. Mass. 2002) (no improper "race to the courthouse" where plaintiff denied liability, did not misrepresent intent to negotiate, and thereafter filed declaratory judgment action to determine its rights).

**C. <u>Nationwide Has Not Shown That Retaining Jurisdiction Over This Case Will Result In Duplicative Or Piecemeal Litigation.</u>**

Retaining jurisdiction over this case would not result in piecemeal litigation.[6] To the extent that any of Nationwide's claims in the Ohio Action are not encompassed in this action, Nationwide can assert them as counterclaims here.[7] *See SW Indus.*, Inc., 653 F. Supp. at 637, 639 (staying second-filed suit in deference to first-filed declaratory judgment action and noting that plaintiff's claims in second filed action "would constitute compulsory counterclaims in the defendant's earlier-filed action").

**D. <u>Nationwide Has Not Shown That CFG's Conduct Was Inequitable.</u>**

Nationwide argues that CFG's decision to wait to effect service of process on Nationwide demonstrates that CFG did not desire to "resolve uncertainty in its legal relationship with Nationwide," *see* Def.'s Mem., at 6. This contention is inconsequential.

CFG did not immediately serve Nationwide because it hoped that Nationwide would reconsider its frivolous demands. Nationwide cannot credibly complain about any delay in service, given that it was served with the Complaint in this Action before it served its Complaint in the Ohio Action, and that Nationwide itself filed suit more than two weeks before it attempted to effectuate service on CFG.

---

6 Nationwide's authority for the proposition that retaining jurisdiction over this action would result in piecemeal litigation is inapposite. In each of the cases Nationwide cites, the declaratory judgment action was filed after the state court proceeding. *See* Def.'s Mem., at 4-5 (citing *Aetna Cas. & Sur. Co. v. Kelly*, 889 F. Supp. 535, 540 (D.R.I. 1998) (declining to exercise jurisdiction over certain declaratory judgment claims where declaratory judgment action was not first-filed and where insurance coverage claims depended upon factual issues to be litigated in underlying actions)); *Employers Mutual Cas. Co. v. PIC Contractors, Inc.*, 24 F. Supp. 2d 212 (D.R.I. 1998) (same); *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353 (9th Cir. 1988) (declining to exercise jurisdiction over second-filed declaratory judgment action where first-filed action was pending in the Superior Court of Guam); *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) (declining to exercise jurisdiction to review by declaratory judgment an order entered by an Illinois state court adjudicating the merits of indemnification claim).

7 Both parties agree that this suit should not proceed simultaneously in two forums. On April 14, 2005, CFG filed a motion to dismiss, transfer, and/or stay the Ohio Action on the basis that the Rhode Island Action was first-filed.

In any event, courts have repeatedly recognized that delay in effectuating service does not indicate inequitable conduct, and should not bar the application of the first-filed presumption. *Comtec*, 962 F. Supp. at 18-19 (rejecting defendant's claim that it was "ambushed" by first-filed declaratory judgment action); *GSI Lumonics, Inc. v. BioDiscovery, Inc.*, 112 F. Supp. 2d 99, 105 (D. Mass. 2000); *Biogen*, 954 F. Supp. at 397-98 (decision to file suit and postpone service did not warrant suspension of first-to-file rule); *see also Smithers-Oasis Co. v. Clifford Sales & Marketing*, 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002) (decision to delay service of process does not indicate that party has acted in bad faith).

Given that the parties are sophisticated, that they were communicating through counsel, and that Nationwide was apparently drafting its own complaint while these events transpired, Nationwide is "hardly in a position to cry 'foul.'" *Comtec*, 962 F. Supp. at 18-19. While Nationwide has attempted to create the impression that the parties were engaged in settlement negotiations, *see* Def.'s Mem., at 2, 6, that is not the case. In its February 10 letter, CFG clearly denied that it was obligated to provide Nationwide with $1.6 million in business per month and made no any suggestion that it was willing to negotiate the issue. In fact, the increase in Nationwide's demand from more than $2 million in February to more than $4 million in March demonstrates that no settlement negotiations were underway. Nationwide did not "rely on any assurance that its claims would be resolved short of litigation." *Holmes*, 249 F. Supp. 2d at 16.

### E. Nationwide Has Not Shown That Convenience Favors Venue In The Later-Filed Ohio Action.

Nationwide makes the conclusory assertion that the action would be more appropriately litigated in Ohio. Def.'s Mem., at 7. This contention fails because the crux of this dispute concerns the dealings between Nationwide and CFG, which is, of course, located in Rhode Island. Nationwide cannot show that CFG's chosen forum is "substantially more inconvenient"

than proceeding in Ohio.[8] CFG filed suit in Rhode Island for the entirely proper reason that its principal place of business is in Rhode Island, and many of the individuals involved in negotiating and finalizing the sale of REAS are located in Rhode Island. *See Holmes*, 249 F. Supp. 2d at 17-19 (no special circumstances overcome presumption of first-to-file rule where plaintiff filed declaratory judgment suit in home forum); *GSI Lumonics*, 112 F. Supp. 2d at 101, 104-05 (refusing to dismiss or transfer first-filed declaratory judgment action where plaintiff filed suit where its principal place of business was located).

Nationwide's argument amounts to nothing more than an assertion that Rhode Island is less convenient for it. That plainly does not suffice. "Transfer of venue is inappropriate, however, where its effect merely shifts the inconvenience from one party to another." *Holmes Group*, 249 F. Supp. 2d at 18; *see also Feinstein*, 304 F. Supp. 2d at 284 (balance of convenience did not overcome first-filed presumption where documents and witnesses were located in both forums, and both forums had some connection to case).

Finally, although the contracts at issue require the application of Ohio law, that is not a reason to favor the Ohio Action; this court is equally as capable as the Northern District of Ohio of interpreting and applying Ohio law. *See SW Indus.*, 653 F. Supp. at 636 (concurrent federal jurisdictions "are equally capable of hearing all interested parties and entertaining all issues sought to be raised"); *Plating Resources*, 47 F.Supp. 2d at 905 ("Ohio is not the 'better' forum simply because the contracts at issue may include Ohio choice of law provisions").

---

[8] While Nationwide has not sought to transfer venue to Ohio, it acknowledges that dismissing this action will have the "practical benefit of allowing this case to proceed in Ohio." *See* Def.'s Mem. at 7. In effect, Nationwide is asking this Court to transfer venue without a proper showing. Therefore, CFG briefly addresses in this Opposition the reasons why a transfer of venue is inappropriate here.

**F. Nationwide's Argument That This Court Should Defer To A State Court Proceeding Is Inapplicable Because Both Actions Are Proceeding In Concurrent Federal Jurisdictions.**

Since Nationwide's Ohio Action has been removed to federal court, Nationwide's argument that this Court should defer to a state court action is wholly inapplicable. *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), is inapposite because its holding was explicitly limited to the standard governing a district court's decision to stay a declaratory judgment action in favor of parallel state litigation. *Id.* at 281, 290. There is no state litigation here, as the Ohio Action is now proceeding in the Northern District of Ohio. In any event, *Wilton* merely stands for the proposition that the Court *may* refuse to exercise jurisdiction. As set forth above, there are compelling reasons why this Court should exercise jurisdiction and permit this action to proceed.

## CONCLUSION

For all of the foregoing reasons, Defendant Citizens Financial Group, Inc. respectfully requests that this Court deny defendant Nationwide Appraisal and Title Company's Motion to Dismiss, or in the Alternative Stay Plaintiff's Complaint for Declaratory Judgment.

Respectfully submitted,

CITIZENS FINANCIAL GROUP, INC.
By its Attorneys

John Daukas by [signature]

John B. Daukas, Esq. (#5437)
GOODWIN PROCTER LLP
53 Exchange Place
Boston, MA 02109
(617) 570-1000

Robert M. Duffy, Esq. (#4428)
Christine K. Bush, Esq. (#5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701

April 15, 2005

## CERTIFICATE OF SERVICE

TO:

Thomas W. Lyons, III, Esq.
Strauss, Factor, Laing & Lyons
22 Richmond Street, Suite 208
Providence, RI 02903

I hereby certify that on this 15 day of April 2005, I caused to be forwarded by First Class Mail a copy of the within *Memorandum of Law in Support of Objection and the Exhibits thereto* to the above-named counsel of record.

Theresa Benson